UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 09-149-GWU


ALVIN CALDWELL,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.


**INTRODUCTION**

Alvin Caldwell brought this action to obtain judicial review of an unfavorable

administrative decision on his application for Supplemental Security Income.  The

case is before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

> 1.    Is the claimant currently engaged in substantial gainful activity?
>        If so, the claimant is not disabled and the claim is denied.
>
> 2.    If the claimant is not currently engaged in substantial gainful
>        activity, does he have any "severe" impairment or combination
>        of impairments--i.e., any impairments significantly limiting his
>        physical or mental ability to do basic work activities?  If not, a
>        finding of non-disability is made and the claim is denied.
>
> 3.    The third step requires the Commissioner to determine
>        whether the claimant's severe impairment(s) or combination of
>        impairments meets or equals in severity an impairment listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

4

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .   .   .  or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The Administrative Law Judge (ALJ) concluded that Caldwell, a 54-year-old man with a high school education, suffered from impairments related to degenerative disc disease, mild scoliosis, a depressive disorder, and dysthymia, (Tr. 12, 19). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 16-18). Since the available work was found to constitute a significant number of jobs in the national economy, the

claimant could not be considered totally disabled.  (Tr. 19-20).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert James Miller included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as (1) an inability to ever climb, balance or operate foot controls; (2) an inability to more than occasionally bend, twist, stoop, kneel, or crawl; (3) a limitation to jobs requiring only simple instructions in an object-focused environment; (4) an inability to have more than occasional and casual contact with co-workers or supervisors; (5) an inability to have contact with the general public; and (6) a limitation to no more than occasional work changes which are gradually introduced.  (Tr. 45-46).  In response, Miller identified a significant number of jobs in the national economy which could still be performed.  (Tr. 46).  Therefore, assuming that the vocational factors considered by the expert fairly depicted the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error.  Caldwell was found capable of

performing a restricted range of light level work in the administrative decision which became final on December 8, 2006.  (Tr. 69-77).  Principles of <u>res</u> <u>judicata</u> require that the administration be bound by this decision unless a change of circumstances is proved upon a subsequent application.  <u>Drummond v. Commissioner of Social Security</u>, 126 F.3d 837, 842 (6th Cir. 1997).  Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . . ."  The ALJ's findings of a restricted range of light level work is in accord with these directives.

The current record does not suggest deterioration in Caldwell's physical condition since his prior denial decision.  Dr. Martin Fritzhand examined the plaintiff and noted that he ambulated with a normal gait and was comfortable both sitting and supine.  (Tr. 181).  Range of motion studies were good.  (Id.).  Neurological examination was completely normal.  (Id.).  Muscle and grasp strength were well-preserved in the upper extremities. (Id.).  Manipulative ability was normal bilaterally. (Id.).  Dr. Fritzhand found no sign of muscle spasm.  (Id.).  Straight leg raising was normal.  (Tr. 182).  Joint abnormalities were not detected.  (Id.).  The doctor found no sign of nerve root damage.  (Id.).  The physician diagnosed chronic low back pain.  (Id.).  Dr. Fritzhand indicated that while he could not be definitive without

additional lab work such as x-rays, the claimant would at least be able to perform "moderate" amounts of sitting, ambulating, standing, bending, kneeling, pushing, lifting and carrying heavy objects.  (Id.).  Clearly, this report does not suggest deterioration in Caldwell's condition since the prior administrative decision and, so, provides support for the administrative decision.

Dr. Robert Brown (Tr. 230) and Dr. Carlos Hernandez (Tr. 287) each reviewed the record and opined that Caldwell's physical problems were "less than severe." These opinions also do not indicate deterioration in the plaintiff's condition since the prior administrative decision.

Treatment records from Mary Breckinridge Healthcare (Tr. 211-214) and Anne Wasson Rural Healthcare (Tr. 215-229, 317-329) do not identify more severe physical limitations than those found by the ALJ.  These indicate treatment for pernicious anemia and muscle pain but do not reveal deterioration in the plaintiff's condition since the prior denial decision.  Therefore, these records also support the administrative decision.

The ALJ also dealt properly with the evidence of record relating to Caldwell's mental condition.  Psychologist Gary Maryman examined the plaintiff and diagnosed malingering, a depressive disorder, and an intermittent explosive disorder.  (Tr. 191).  Maryman rated the claimant's Global Assessment of Functioning (GAF) at 58. (Id.).  This GAF suggests the existence of "moderate" psychological symptoms

according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  The examiner indicated that Caldwell's prognosis was "reasonably good."  (Id.).  The psychologist noted that "because of his manner of conducting himself (including seemingly attempting to misrepresent himself) it is rather difficult to get a good handle on the exact condition of this gentleman."  (Id.).  Maryman did indicate that the plaintiff would be able to perform simple to more complex instructions and tasks and sustain concentration and persistence sufficiently to carry out routine work assignments.  (Tr. 191-192).  The claimant would be able to interact with co-workers and supervisors but would need to avoid public contact.  (Tr. 192).  The ALJ's findings were essentially consistent with these restrictions.  The court notes that the psychologist also stated that Caldwell would be able to deal with low to medium stress and work pressures but would have problems with fast-paced, high stress work.  (Id.).  This restriction was not presented to the vocational expert.  However, the ALJ noted that because of the strong evidence of malingering and Maryman's admitted difficulty in assessing the plaintiff's true condition as a result, the opinion was not entitled to full weight and ultimately relied upon the prior ALJ's findings.  (Tr. 15, 18).  Under the circumstances, the undersigned finds no error.

Psychologists Laura Cutler (Tr. 193-196) and Ilze Sillers (Tr. 234-237), the non-examining medical reviewers, each opined that Caldwell would be "moderately

limited" in working in coordination with or in proximity to others without being distracted by them, interacting appropriately with the general public, and responding to changes in the work setting. The ALJ's findings were essentially consistent with these limitations.

Penny Melgoza and Sally McEnroe treated Caldwell at the Adanta Group and completed a Medical Opinion of Ability to do Work-Related Activities Form upon which they identified the existence of extremely severe mental limitations, including a "poor or none" ability to maintain regular attendance and be punctual within customary tolerances, perform at a consistent pace without an unreasonable length and number of rest periods, ask simple questions or request assistance, deal with normal work stress, handle detailed instructions, set realistic goals or make plans independently of others, travel in unfamiliar places and use public transportation. (Tr. 332-333). The opinion was rejected as binding by the ALJ. (Tr. 18). The plaintiff asserts that this opinion was entitled to superior weight. However, as noted by the defendant, neither Melgoza nor McEnroe would be considered to be an "acceptable medical source" whose opinion would be binding under the the federal regulations at 20 C.F.R. § 416.913. The ALJ noted a number of reasons based upon the treatment notes from the Adanta Group as to why these opinions were not well-supported, including frequent references to the claimant's non-compliance with his medication, his erratic attendance at scheduled therapy sessions, and

suspicions by the staff of malingering on the part of the patient.  (Tr. 18, 184, 232, 255, 257, 262, 264).  Therefore, the ALJ dealt properly with this evidence.

Caldwell argues that the ALJ did not properly evaluate his subjective pain complaints.  Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Caldwell was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  As noted by the ALJ, the claimant  had only made two visits to the Anne Wasson Clinic for treatment of his physical problems in the past two years.  (Tr. 17, 215-229).  Dr. Fritzhand made largely unremarkable findings during his examination.  (Tr. 18).   Neither medical reviewer even thought that the evidence supported the existence of a "severe" physical impairment.  (Tr. 230, 287).  Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with

the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Watson's pain complaints.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 7th day of April, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**